IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHELLE JOHNSON,

    *Plaintiff*,

    v.

BALTIMORE CITY POLICE
DEPARTMENT,

    *Defendant*.

Civil Action No. ELH-12-2519

## MEMORANDUM OPINION

Richelle Johnson, plaintiff, a former Baltimore City police officer, filed an employment discrimination action against the Baltimore City Police Department (the "BPD"), defendant, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"). *See* Amended Complaint (ECF 12, "Am. Compl.") at 1. Plaintiff, who is African-American, contends that the BPD failed to provide her with a reasonable accommodation of light duty or administrative work. Instead, she claims that she was placed on a medical suspension and eventually forced to retire pursuant to a BPD policy. According to plaintiff, however, the BPD allowed other officers who were not African-Americans to continue working in light duty roles.

Plaintiff seeks, *inter alia*, a declaratory judgment that the BPD violated Title VII and the ADA; reinstatement; damages, including lost wages and benefits, as well as "compensatory and liquidated damages for the financial and emotional harm" allegedly caused by the BPD; interest, costs, attorney's fees, and expert fees; and an injunction against "future unlawful employment practices." *See* Am. Compl. at 7-8.

Now pending is defendant's motion to dismiss the Amended Complaint (ECF 26), supported by a legal memorandum (ECF 26-1, "Mem.") (collectively, the "Motion" or "Mot.").[1] Plaintiff opposes the motion (ECF 27, "Opposition" or "Opp."), and defendant has replied (ECF 28, "Reply"). No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, the Motion will be granted in part and denied in part.

## I. Factual Background[2]

Johnson began working at the BPD on June 1, 1999, in the capacity of Fingerprint Technician. Am. Compl. ¶ 5. She later held the position of Police Officer, assigned to the Southern District, where she was supervised by Sgt. Lawrence and Sgt. Grueinger, both Caucasian males. *Id.* ¶ 6.[3]

Plaintiff suffered several injuries during her time with the BPD. In 2005, she "was injured on the job in a motor vehicle accident in a patrol car," injuring her neck, lower back, and both knees. Johnson returned to full duty after "months of recuperation." *Id.* ¶ 7. Subsequently,

_____

[1] Plaintiff filed her original Complaint (ECF 1) on August 23, 2012. After defendant filed an initial "Motion to Dismiss Plaintiff's Complaint and/or for Summary Judgment" (ECF 7) on December 3, 2012, plaintiff filed a Motion for Leave to File an Amended Complaint (ECF 10), but did not otherwise respond to defendant's motion. I granted plaintiff's motion to amend (ECF 10) on January 7, 2013, and denied defendant's motion to dismiss (ECF 7), without prejudice. *See* ECF 11. Defendant subsequently filed a "Motion for Summary Judgment, or in the Alternative, Motion to Dismiss the Amended Complaint" (ECF 19), to which plaintiff responded with a "Rule 56(d) Motion for Discovery" (ECF 21). In a Memorandum to Counsel dated April 24, 2013, I granted plaintiff's Motion for Discovery and denied, without prejudice, defendant's summary judgment motion, on the ground that it was premature. *See* ECF 25. Nevertheless, I explained that, "[t]o the extent that the arguments asserted in the Summary Judgment Motion can be resolved without conversion to summary judgment, under a Rule 12(b) standard, the BPD will be free to renew its arguments in a 'pure' Rule 12(b) motion[.]" *Id.* Defendant filed the present Motion, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on May 15, 2013.

[2] The facts are drawn largely from plaintiff's Amended Complaint. For purposes of resolving defendant's Motion, the well-pleaded allegations contained in the Amended Complaint are taken as true.

[3] Plaintiff does not provide the officers' first names in her Amended Complaint.

in 2008, Johnson "was again hurt on the job" when she "fell down the stairs leaving a victim's home and injured her lower back in the same area as she had in 2005." *Id.* ¶ 8. Although Johnson received therapy for that injury, "she continued to experience occasional pain." *Id.*[4]

In June 2010, Johnson was diagnosed with "fibroid cystic tumors" and "underwent a partial hysterectomy on July 27, 2010 to treat and remove the tumors." Am. Compl. ¶ 9. Johnson's ongoing treatment for the 2008 back injury "was suspended while she underwent surgery for the partial hysterectomy." *Id.* ¶ 10. At the time of the surgery, Johnson's physician told her the recovery would take a minimum of 40 days. Because "the internal sutures that Johnson had received took longer than expected to heal," she remained out of work for three months. *See id.* ¶¶ 11, 16. In accordance with BPD policy, Johnson provided medical documentation to the BPD's Public Safety Infirmary (the "PSI"), "evidencing her diagnosis, treatment, and prognosis." *Id.* ¶ 12. She also regularly updated her supervisors and district commanders as to her recovery. *Id.*

In early September 2010, Johnson was instructed to report to the PSI for an evaluation of her 2008 line-of-duty injury. Although she "inquired about why she was being evaluated for that injury when she was still on leave and recovering from her hysterectomy," Johnson reported to the PSI as ordered, on September 13, 2010, and was evaluated before being sent home to continue recovering from the hysterectomy. Am. Compl. ¶ 13. The next day, September 14, 2010, Johnson received a telephone call "demanding to know why she had not reported to work after her evaluation at the PSI." As Johnson explains, an officer released for duty by the PSI typically will return to work. Although the PSI had released her for duty in connection with the 2008 injury, Johnson was sent home because she was still recovering from the hysterectomy and

---

[4] As explained, *infra*, although the 2005 injury occurred while Johnson was in a patrol car, the BPD apparently did not treat that incident as a line-of-duty injury. That classification, however, is irrelevant for purposes of the present Motion.

had not yet been cleared to return to work. *Id.* ¶ 14. After receiving the call, Johnson returned to work and explained her situation to a supervisor, who sent her back to PSI. At PSI, she was placed back on disability leave and told to "stay out until her primary care physician had released her to work." *Id.* ¶ 15.

Johnson returned to work on October 27, 2010, and informed Sgt. Lawrence and Lt. McGarry,[5] also a Caucasian male, that she had been "medically cleared to return to 'light duty' work at her assigned duty station." Johnson "specified that she was disabled and was requesting a reasonable accommodation." Am. Compl. ¶ 16. According to Johnson, at that time she was "substantially limited by her medical condition in numerous major life activities, including but not limited to lifting, reaching, pushing, pulling, and running." Johnson adds that because her "medical condition is permanent," she "is 'disabled' within the meaning of the Americans with Disabilities Act." *Id.* ¶ 17.

Lt. McGarry informed Johnson on October 27, 2010, that she was medically suspended pursuant to orders from Major Margaret Barillaro, who is Caucasian, and was being "detailed out of the District." *Id.* ¶ 18. Prior to the suspension, no one at the BPD discussed with Johnson either the accommodation request or possible alternative accommodations. *See id.* ¶ 19.

According to Johnson, notwithstanding the BPD's "written policy stating that [it] lacks any permanent light duty police officer positions, BPD does in fact employ numerous police officers in permanent light duty and/or administrative positions." Johnson states that, at "all relevant times hereto," she "was capable of performing the essential functions of light duty and/or administrative positions at BPD." *Id.* ¶ 20. Additionally, Johnson explains that because

---

[5] The Amended Complaint does not include McGarry's first name.

of her medical suspension, she "was ineligible for overtime and secondary employment" and thus "suffer[ed] a significant reduction in her income." Am. Compl. ¶ 21.[6]

In or around September 2011, the BPD notified Johnson that she would have to file for disability retirement due to the 2008 back injury, which she did on September 19, 2011. Am. Compl. ¶ 22.[7] According to Johnson, "[the] BPD characterized [her] 2008 injury as the same injury as the one from 2005, [even] though Johnson had fully recovered and was on full duty at the time of [the] 2008 injury. As such, the BPD was able [to] classify the injury as [a] non-line-of-duty injury for purposes of disability retirement, which significantly reduced the pension Johnson would receive." *Id.*

Johnson alleges that at least two similarly-situated African-American police officers in the Southern District—Latrice Beverly and Samuel Thomas—"were subjected to the same treatment by Major Barillaro," in that they "were placed on medical suspension after requesting to be placed on light duty and were eventually forced to retire." Am. Compl. ¶ 23. Yet, according to Johnson, at least four Caucasian or Latino police officers in the Southern District— Todd Nock, Jennifer Hupp, "Rodriguez," and Jonathon Frye—requested a reasonable accommodation and "were permitted by Major Barillaro to return to light duty instead of being placed on medical suspension or forced to retire." *Id.* ¶ 24.[8]

---

[6] Although the Amended Complaint does not explicitly state that plaintiff was paid during the medical suspension between October 2010 and September 2011, it is apparent, based on the allegation that she was "ineligible for overtime and secondary employment," that she continued to receive her salary. *See* Am. Compl. ¶ 21. The parties' arguments in the briefing of the Motion confirm that reading. Because plaintiff alleges only that she was "detailed out of the [Southern] District" beginning in October 2010, it is not entirely clear whether or in what capacity she continued working during that time. *See id.* ¶ 18.

[7] Although Johnson filed for retirement at that time, the Amended Complaint does not make clear when her retirement became effective.

[8] Plaintiff does not provide the first name for Officer "Rodriguez."

Johnson filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter "on or after May 29, 2012." Am. Compl. ¶ 25. Although plaintiff did not attach the EEOC charge to her Amended Complaint, defendant attached it to its Motion. *See* Mot. Exh. A ("Charge of Discrimination").[9]

Plaintiff's Charge of Discrimination is dated March 26, 2011. *Id.* The Charge of Discrimination form includes ten check-box options in which a petitioner can indicate one or more bases of the alleged discrimination. Johnson selected the boxes labeled "RACE" and "DISABILITY"; she did not select any of the other options. *Id.* Moreover, she specified that the alleged discrimination occurred between October 27, 2010, and February 8, 2011, and further alleged "CONTINUING ACTION." *Id.* The narrative portions of Johnson's allegations, which are discussed below, generally parallel the Amended Complaint's allegations pertaining to the time period of July 2010 through October 2010. *See id.*

In connection with Count I's Title VII claim of race discrimination, the Amended Complaint states that the BPD "denied Johnson a reasonable accommodation while providing the same reasonable accommodation to Caucasian and Latino Police Officers." Am. Compl. ¶ 30. Furthermore, the BPD allegedly "placed Johnson on medical suspension, causing a significant reduction in her income, and eventually forced her to retire, when similarly situated Caucasian and Latino Police Officers have not be placed on medical suspension and/or forced to retire after requesting to be placed on light duty." *Id.* ¶ 31.

In Count II, the ADA claim, Johnson states that she was "entitled to protection under the ADA in that she was disabled and/or regarded [as] disabled, and she was capable of performing the essential functions of a light duty and/or administrative Police Officer." Am. Compl. ¶ 37.

---

[9] As discussed, *infra*, the Court may consider the Charge of Discrimination in connection with defendant's Motion.

According to Johnson, the BPD violated the ADA when it "knowingly and intentionally engaged in unlawful discrimination based on Johnson's disability by failing to accommodate her disability and by forcing her into early retirement because of her disability." *Id.* ¶ 38.

Additional facts are included in the Discussion.

## II. Discussion

### A. Employment Discrimination

Plaintiff brings claims under Title VII and the ADA. Title VII prohibits an employer from taking "adverse employment action" against an employee on a prohibited basis. *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Among other things, the ADA "makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'" *Summers v. Altarum Institute, Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) (quoting 42 U.S.C. § 12112(a)).

#### 1. Proof under Title VII

In general, there are "two avenues" at trial by which a plaintiff may prove that an adverse employment action amounts to intentional employment discrimination. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc), *cert. denied*, 543 U.S. 1132 (2005). The first avenue is to offer evidence of discrimination under "'ordinary principles of proof.'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted). To satisfy ordinary principles of proof, a plaintiff at trial must provide direct or circumstantial evidence of discrimination that is sufficiently probative to meet her burden of proof. *See Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

The second avenue of proof available to the plaintiff at trial is to follow the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*,

411 U.S. 792 (1973).[10]  The *McDonnell Douglas* scheme is "a procedural device, designed only to establish an order of proof and production."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted).  Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff" to prove intentional unlawful discrimination.  *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n. 2 (4th Cir. 1989) (citation omitted).

Absent direct evidence of discrimination, the plaintiff at trial must first establish a "prima facie case of discrimination." *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013); *see Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010).  Although the precise formulation of the required prima facie showing will vary in "differing factual situations," *McDonnell Douglas*, 411 U.S. at 802 n.13, the plaintiff in an employment discrimination suit under Title VII is generally required to show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

If the plaintiff establishes a prima facie case, "a presumption of illegal discrimination arises, and the burden of production shifts to the employer" to produce evidence of a legitimate, non-discriminatory reason for its adverse employment action.  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142

---

[10] *McDonnell Douglas* involved a claim of racial discrimination in hiring under Title VII of the Civil Rights Act of 1964.  However, the burden-shifting methodology it endorsed has been adapted for use in other statutory contexts.  *See, e.g.*, *Raytheon Co. v. Hernandez*, 540 U.S. 44, 50-52 & n.3 (2003) (applying *McDonnell Douglas* framework in employment discrimination case under Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*); *see also Young v. United Parcel Service, Inc.*, 707 F.3d 437, 445-46 (4th Cir. 2013) (applying *McDonnell Douglas* framework to Title VII sex discrimination claim); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006) (applying *McDonnell Douglas* framework to claim of employer retaliation for taking FMLA-protected leave); *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) (applying *McDonnell Douglas* framework to employee's claim of age discrimination).

(2000). "If the defendant carries this burden of production the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant," and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510-11. Stated another way, if the employer produces evidence that could persuade a fact finder that it had a legitimate, non-discriminatory reason for its actions, "the defendant has done everything that would be required of [it] if the plaintiff had properly made out a *prima facie* case," and therefore, "whether the plaintiff really did so is no longer relevant." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711 (1983).

When the defendant meets its burden of production, the plaintiff must then prove, by a preponderance of the evidence, "that the proffered reason was not the true reason," and that the plaintiff "has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 255-56; *see Reeves*, 530 U.S. at 143; *St. Mary's Honor Ctr.*, 509 U.S. at 516-20; *Adams v. Trustees of Univ. of North Carolina-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) ("[I]n demonstrating the Defendants' decision was pretext, [plaintiff] had to prove '*both* that the reason was false, *and* that discrimination was the real reason.'") (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995)) (emphasis in original).

These two methods of proof establish the standards to prove intentional employment discrimination at trial. *Hill*, 354 F.3d at 284-85. But, at the motion to dismiss stage, they serve only to inform a court's evaluation of the allegations. *See Merritt*, 601 F.3d at 295. Accordingly, in a Title VII discrimination claim, "a complaint in an employment discrimination lawsuit [need not] contain specific facts *establishing* a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002) (emphasis added). Rather, as with any other claim falling within the purview of Rule

8(a), "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permit[s] the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, --- U.S.----, 132 S. Ct. 1327 (2012) (citation omitted).

In the context of a Title VII race discrimination claim, the Fourth Circuit has framed the prima facie case as: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Id.* (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)); *see also Gerner v. County of Chesterfield, Va.*, 674 F.3d 264, 266 (4th Cir. 2012).

## 2. Proof under the ADA

The *McDonnell Douglas* burden-shifting framework applies to employment claims under the ADA. *See, e.g.*, *Raytheon Co.*, 540 U.S. at 50-52 & n.3. With respect to an ADA claim of wrongful discharge, the Fourth Circuit has stated:

> In a wrongful discharge case under the ADA, a plaintiff makes out a prima facie case by demonstrating that "(1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination [because of plaintiff's disability]."

*Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (quoting *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).[11]

_____

[11] In the context of a claim under Title I of the ADA for wrongful termination on the basis of disability, the Sixth Circuit has stated that a plaintiff's prima facie case consists of "five things: [1] [the plaintiff] was disabled; [2] she was otherwise qualified to perform the essential functions of her job; [3] she suffered an adverse employment action; [4] her employer knew or had reason to know of her disability; and [5] either the position remained open or a non-disabled person replaced her." *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012). This formulation, consistent with the one reflected in the text above, expands the fourth element into separate (and more specific) fourth and fifth elements, so as to specify *how*

As to failure to accommodate, the Fourth Circuit explained in *Rhoads*:

> In a failure to accommodate case [under the ADA], a plaintiff establishes a prima facie case by showing "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations."

*Id.* (quoting *Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999)) (second alteration in original).

Plaintiff does not specify whether her suit is founded on Title I or Title II of the ADA. Indeed, she does not mention either provision in her suit. Instead, Count II of the Amended Complaint refers generally to the ADA, citing 42 U.S.C. §§ 12101 *et seq.*

Title I of the ADA governs employment. It prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Title II, governing public services, states in relevant part, 42 U.S.C. § 12132: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[12]

---

the circumstances raise an inference of unlawful discrimination, which is helpful to a court that must apply the standard.

[12] Although the Fourth Circuit has not directly addressed the issue, in at least one instance it has permitted a plaintiff to bring an employment action under Title II. *See Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264-65 (4th Cir. 1995); *see also Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 360 n.1 (2001) (noting that federal appellate courts are divided on whether employment discrimination claims are available under Title II, but declining to resolve the issue). *Compare Bledsoe v. Palm Beach County Soil & Water Conservation Dist.*, 133 F.3d 816, 821 (11th Cir. 1998) (concluding that Title II of the ADA applies to employment actions), *with Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir.

Of import here, Title I of the ADA adopts Title VII's administrative exhaustion requirement, found in 42 U.S.C. § 2000e–5, under which an employee must file a charge of discrimination with the EEOC before proceeding in federal court. *See* 42 U.S.C. § 12117(a). In contrast, the exhaustion requirement does not apply to Title II of the ADA. *See Pathways Psychosocial v. Town of Leonardtown, MD*, 223 F. Supp. 2d 699, 713 (D. Md. 2002) ("Title II of the ADA does not contain an administrative exhaustion requirement.").

On at least two occasions, courts in this District have addressed allegations in which it was unclear whether an ADA claim was brought under Title I, Title II, or both provisions. In *Allen v. Hamm*, 2006 WL 436054, at *5 (D. Md. Feb. 22, 2006) (Bennett, J.), *aff'd*, 226 F. App'x 264 (per curiam), *cert. denied sub nom. Blades v. Hamm*, 552 U.S. 951 (2007), which involved a challenge to the BPD's light duty policy, the plaintiffs cited Title II of the ADA in the complaint, but based their legal argument on Title I. The district court observed that the question of whether Title I or Title II applies "is often contested because Title I incorporates administrative prerequisites that are not required under Title II." *Id.* However, the plaintiffs' compliance with the administrative exhaustion requirement was "no longer at issue." *Id.*[13] Accordingly, the district court concluded that it "need not decide whether Title II of the ADA permits Plaintiffs to bring employment discrimination claims against the Police Department." *Id.* Rather, it "assume[d] without deciding that Plaintiffs may bring employment discrimination claims against the Police Department under Title II, and analyze[d] those claims under the language and

2013) ("[W]e join the Ninth and Tenth Circuits and hold that Title II of the ADA does not cover disability-based employment discrimination. Instead, employment-discrimination claims must proceed under Title I of the ADA[.]").

[13] Although it is not entirely clear why the administrative exhaustion issue was no longer in dispute, the district court observed in a footnote that "Plaintiffs' counsel represent[ed] that the EEOC has issued right-to-sue letters to each of the remaining Plaintiffs" and that defendants had conceded "that their argument with respect to exhaustion of administrative remedies is now moot as to" one particular plaintiff. *Allen*, 2006 WL 436054, at *5 n.7.

precedent of Title I of the ADA." *See id.* (citation omitted). Applying those standards, the district court granted summary judgment for the defendants, without any further reference to exhaustion or Title II. *See id.* at *13.

Similarly, in *Pisani v. Baltimore City Police*, 2013 WL 4176956 (D. Md. Aug. 14, 2013) (Quarles, J.), a discrimination suit against the BPD, it was "unclear whether [the plaintiff's] disability discrimination claim [arose] under Title I or II of the ADA, or both." *Id.* at *6 (footnotes omitted). However, it was unnecessary to decide that question because the relevant legal standards at the motion to dismiss stage were no different with respect to the two provisions. *See id.* Although the defendants had argued that the plaintiff failed to exhaust administrative remedies, neither party had attached the charge of discrimination to the pleadings, and thus the court concluded that the exhaustion issue could be addressed only after the defendants obtained the charge of discrimination through discovery. *Id.* at *3, *6 n.13. As such, the distinction between Title I and Title II of the ADA on the question of exhaustion was irrelevant to the court's analysis of the defendants' motion to dismiss. *See id.* at *6 ("the Court need not determine whether Pisani intended to sue for employment discrimination under Title I or II, and, if he intended to sue under Title II, whether his claim is cognizable") (citing *Allen*, 2006 WL 436054, at *5).

In this case, and unlike in *Allen* or *Pisani*, the administrative exhaustion issue is properly before the Court, and thus the distinction between Title I and Title II is of potential significance. However, in plaintiff's response to the exhaustion argument raised in the Motion, plaintiff argues only that the exhaustion requirement was satisfied here; she does not argue that the requirement is inapplicable to any portion of her ADA claim. *See* Opp. at 4-7. That aspect of the Opposition indicates that plaintiff has pursued her ADA claim only under Title I, which expressly pertains to

employment discrimination and requires exhaustion, and not under Title II.  In light of those considerations, I will construe Count II of plaintiff's Amended Complaint as a claim under Title I of the ADA.[14]

## B.  Administrative Exhaustion

Defendant first argues that, under Title VII and the ADA, plaintiff failed to exhaust her claims that she was forced to retire (the "forced retirement claim"), because she omitted that discriminatory act from her Charge of Discrimination.  Mem. at 6-10.[15]  Plaintiff counters that her "claim that she was forced into disability retirement is reasonably related to" the claims she raised in the Charge of Discrimination.  *See* Opp. at 4-7.  As explained below, plaintiff identifies at least one other cognizable adverse employment action that is not subject to an exhaustion challenge.  Accordingly, defendant's contention could, at most, limit the scope of plaintiff's allegations, but cannot require dismissal of her Title VII or ADA counts.[16]

Before filing a claim under Title VII, a "person aggrieved" by an alleged unlawful discriminatory employment practice must timely exhaust her administrative remedies.  *Balas v. Huntington Ingalls Industries, Inc.*, 711 F.3d 401, 406 (4th Cir. 2013).  And, Title I of the ADA incorporates the enforcement procedures of Title VII, including the requirement of administrative exhaustion.  *See Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012).  Accordingly, under Title I of the ADA, a plaintiff must "exhaust [her] administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court."  *Id.*

---

[14] This determination is without prejudice to plaintiff's right to move for leave to amend her complaint to add an ADA Title II claim.

[15] Defendant characterizes plaintiff's forced retirement claim as a "constructive discharge claim."  Neither party identifies any legal significance to that distinction, and I use the terms interchangeably here.

[16] Even assuming that plaintiff failed to exhaust the forced retirement aspect of her Title VII and ADA claims, plaintiff has adequately alleged an adverse employment action based upon the medical suspension.  *See infra.*

Under the exhaustion requirement, a plaintiff must file a "charge" of discrimination with the EEOC or, in a "deferral" jurisdiction,[17] with an appropriate state or local agency, within a specified time "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). *See, e.g., Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 & n.3 (4th Cir. 2002). Suit cannot be brought until the administrative process is exhausted. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

The filing of an administrative charge "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko*, 429 F.3d 505 at 510. Rather, "the charge itself serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407. In particular, "[t]he exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see Balas*, 711 F.3d at 406-07 (exhaustion of EEOC administrative process "notifies the charged party of the asserted violation" and "brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law") (citations and quotation marks omitted).

The exhaustion requirement is regarded as jurisdictional. *Balas*, 711 F.3d at 406 ("[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300-01

---

[17] A deferral jurisdiction is a state that has a law prohibiting employment discrimination on the same bases covered by the federal statutes, and authorizing a state or local agency to grant or seek relief from such discrimination. *See* 42 U.S.C. § 2000e–5(c), (d); *see, e.g., Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 661-62 (D. Md. 2011). Maryland is a deferral state under Title VII; the Maryland Commission on Civil Rights, formerly known as the Maryland Commission on Human Relations, is the applicable state enforcement agency. *See Prelich*, 813 F. Supp. 2d at 661; *see also EEOG v. R & R Ventures*, 244 F.3d 334, 338 n.* (4th Cir. 2001); 29 C.F.R. § 1601.74 (listing qualifying state enforcement agencies).

(4th Cir. 2009). Thus, facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999). An employee who does not comply with the administrative procedures outlined above has failed to exhaust administrative remedies and therefore is barred from filing suit in federal court. *See, e.g.*, *Miles*, 429 F.3d at 491; *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).

Of import here, "[t]he scope of the plaintiff's right to file a federal lawsuit [under Title VII] is determined by the . . . contents" of the charges filed by the plaintiff with the EEOC or corresponding state agency during the process of exhaustion. *Jones*, 551 F.3d at 300 (citation omitted). "'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit.'" *Id.* (citation omitted); *see Miles*, 429 F.3d at 491 (an EEOC charge "'does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination'") (quoting *Bryant*, 288 F.3d at 132). The Fourth Circuit has said that "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506; *accord Clarke v. DynCorp Intern. LLC*, 962 F. Supp. 2d 781, 787 (D. Md. 2013) (Motz, J.).

"A charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.' 29 C.F.R. § 1601.12(b) (2004)." *Chacko*, 429 F.3d at 508. Although courts "recognize that EEOC charges often are not

- 16 -

completed by lawyers and as such must be construed with utmost liberality," courts are "not at liberty to read into administrative charges allegations they do not contain." *Balas*, 711 F.3d at 408 (citations and quotation marks omitted). As the Fourth Circuit recently explained, "persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may . . . file an amended charge with the EEOC.") *Id.* (citing 29 C.F.R. § 1601.12(b)).

Defendant argues that plaintiff failed to exhaust administrative remedies with respect to her forced retirement claim, as she omitted "this discrete discriminatory act in her EEOC charge." Mem. at 6-10. Plaintiff counters that her forced retirement claim may proceed because it is reasonably related to the suspension and accommodation claims found in the Charge of Discrimination, and because her forced retirement "was a natural and inevitable consequence" of the BPD's earlier refusal to accommodate her with administrative or light-duty work. Opp. at 7.

As noted, plaintiff did not append the Charge of Discrimination to the Amended Complaint, but defendant attached it to the Motion. *See* ECF 26-3.[18] The Charge of Discrimination filed by Johnson is dated March 26, 2011. *See* Mot. Exh. A, ECF 26-3 at 2. It describes conduct occurring between October 27, 2010, and February 8, 2011, and further alleges "CONTINUING ACTION." *Id.* Among ten check-box options indicating the basis of

---

[18] As explained, *infra*, under a Rule 12(b)(6) standard, a court may consider a document that is integral to the complaint, where no party has objected to its consideration. The Charge of Discrimination meets those criteria. *See, e.g.*, *Rhodes v. Montgomery County Dept. of Corrections and Rehabilitation*, 2013 WL 791208, at *6 (D. Md. Mar. 1, 2013) (a court may consider a charge of discrimination attached to motion to dismiss where the charge is integral to the complaint and where its authenticity is undisputed); *Betof v. Suburban Hosp., Inc.*, 2012 WL 2564781, at *3 n.6 (D. Md. June 29, 2012) (same); *White v. Mortgage Dynamics, Inc.*, 528 F. Supp. 2d 576, 579 (D. Md. 2007) (a court may consider a charge of discrimination attached to motion to dismiss where charge was incorporated by reference, integral to the complaint, and no party objected).

the alleged discrimination, Johnson selected "RACE" and "DISABILITY." *Id.* As for the narrative portion, the Charge states, in part, *id.*:

> I currently hold the position of Police Officer under Sgt. Lawrence (White) at the Southern District and Sgt. Grueinger (White) who I am detailed to. On July 27, 2010, I went out of work for forty days due to disability. On October 27, 2010, I returned to work and informed Sgt. Lawrence and Lt. McGarry (White) that I was medically cleared to return to "light duty" at my assigned duty station and was requesting reasonable accommodation. Later the same day, I was informed by Lt. McGarry that I was being medically suspended per orders from Major Barillaro (White) and detailed out of district . . . .
>
>             \*     \*     \*
>
> No explanation was given as to why I was not permitted to return to work on "light duty," or for my medical suspension.
>
> I believe I was discriminated against because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended; and the Americans with Disabilities Act of 1990, as amended, respective to reasonable accommodation and medical suspension.

Defendant is correct that the Charge of Discrimination makes no reference to plaintiff's forced retirement. According to plaintiff, the BPD notified her in September 2011 that she would have to file for disability retirement, which she did on September 19, 2011. Am. Compl. ¶ 22. Thus, the filing of the Charge of Discrimination on March 26, 2011, predated the BPD's notification, as well as plaintiff's filing for retirement, by approximately six months.

Notably, a petitioner may supplement or amend a charge after it is filed so as to include "amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge." 29 C.F.R. § 1601.12(b); *see also Balas*, 711 F.3d at 408. But, plaintiff does not claim that she amended the Charge of Discrimination or attempted to do so. And, there is no suggestion that plaintiff lacked an opportunity either to amend her Charge of Discrimination or to file a new charge, prior to filing her original Complaint in August 2012. A failure to amend a charge of discrimination, where

necessary, constitutes a failure to exhaust administrative remedies. *See Sloop v. Memorial Mission Hospital, Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (plaintiff who took no official action to amend the charge of discrimination failed to exhaust administrative remedies with respect to claim omitted from the original charge).

The adverse employment action at issue—forced retirement—is distinct from the conduct found in plaintiff's March 2011 Charge of Discrimination, which concerned only the accommodation request and medical suspension. Of import here, courts routinely hold that a discrete adverse employment action must be administratively exhausted. *See, e.g., Chacko*, 429 F.3d at 509 ("A claim will also typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits."); *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863-64 (4th Cir. 1982) (where plaintiff's EEOC charge alleged only a discriminatory layoff claim, court lacked jurisdiction over plaintiff's discriminatory failure-to-rehire claim); *Sawyers v. United Parcel Service*, 946 F. Supp. 2d 432, 441 (D. Md. 2013) (where administrative charge alleged only supervisor harassment, allegations concerning co-worker harassment not exhausted) (citing *Chacko*, 429 F.3d at 511); *Herbig v. Martin*, 2013 WL 3146937, at *5 (D. Md. June 18, 2013) (indicating that failure-to-promote allegation amounts to an "entirely different bas[i]s for relief" than allegation for discrimination in pay and benefits) (citing *Evans*, *supra*, 80 F.3d at 963-64); *Alston v. Astrue*, 2012 WL 665982, at *4 (D. Md. Feb. 28, 2012) (concluding that plaintiff's "failure-to-promote claims may not proceed before this Court because they were not included in her EEO complaints," and explaining that "a discriminatory failure to promote is not the type of claim that would fall within the 'scope of the administrative investigation that can reasonably be expected to follow' [plaintiff's] initial

charges of discrimination") (quoting *Chisholm*, 665 F.2d at 491); *Jones v. Republic Services, Inc.*, 2011 WL 6000761, at *3 (D. Md. Nov. 29, 2011) (noting that "denial of an alternative schedule [is] considerably different from the discriminatory behavior alleged in the administrative charge—suspension and termination" and concluding that alternative schedule claim not exhausted).

To be sure, certain claims absent from a charge of discrimination may be pursued in a subsequent lawsuit if they are "reasonably related to the original complaint" or "developed by reasonable investigation of the original complaint." *See Jones*, 551 F.3d at 300. But, as noted, a plaintiff has failed to exhaust administrative remedies where a charge of discrimination references "different time frames, actors, and discriminatory conduct" than the allegations found in a complaint. *See Chacko*, 429 F.3d at 506.

Here, the forced retirement did not occur during the same time period as the conduct identified in the Charge. In particular, Johnson filed for retirement in September 2011, six months after she filed the Charge of Discrimination, and nearly a year after the BPD declined plaintiff's request for an accommodation and initiated the medical suspension. *See* Mot. Exh. A, ECF 26-3 at 2. And, there is no indication in the Amended Complaint that the forced retirement involved the same BPD officials as plaintiff's medical leave; rather, the allegations concerning the forced retirement refer generically to the BPD. Because plaintiff's allegations regarding the forced retirement do not implicate the same "time frames, actors, and discriminatory conduct" as the allegations found in the Charge of Discrimination, the forced retirement allegations fail under the exhaustion requirement and may not proceed. *See Chacko*, 429 F.3d at 506.

<u>C.  Defendant's Rule 12(b)(6) Arguments</u>

Defendant maintains that plaintiff failed to plead a plausible claim under either the ADA or Title VII.  *See* Mem. at 10-17.  In particular, the BPD argues that plaintiff has not pleaded facts establishing that she is "disabled" under the ADA; that she was performing her duties in a satisfactory manner; that she suffered an adverse employment action; or that the comparators she identified were "similarly situated" to her.  *See id.*  In her Opposition, plaintiff avers that she has pleaded sufficient facts to state ADA and Title VII claims.  *See* Opp. at 7-15.

<u>1.  The Rule 12(b)(6) standard</u>

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of Rule 8(a)(2) is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  Rather, to defeat a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . . ") (citation omitted); *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir.

2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court explained, 556 U.S. at 679: "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." To determine "whether this standard is met," a court separates "the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to relief. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, --- U.S. ----, 132 S. Ct. 1960 (2012). Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted). Put another way, "'[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.' Dismissal is appropriate if the law simply affords no relief.") (internal citation omitted).

As indicated, under Rule 12(b)(6), the court must assume the truth of all well-pleaded allegations in the complaint, as well as the reasonable inferences drawn from the facts. *Albright*

*v. Oliver*, 510 U.S. 266, 268 (1994); *Brockington*, 637 F.3d at 505-06; *E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Nor must it accept legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

Typically, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint," the court may resolve the applicability of a defense by way of a Rule 12(b)(6) motion. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

In resolving a Rule 12(b)(6) motion, a court "[o]rdinarily . . . may not consider any documents that are outside of the complaint, or not expressly incorporated therein. . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U. S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). In considering a challenge to the adequacy of a plaintiff's pleading, however, a court may properly consider documents "attached or

incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).[19]

## 2. Plaintiff's status as "disabled" under the ADA

Among its arguments raised under Rule 12(b)(6), defendant first challenges plaintiff's ADA claim on the ground that she is not "disabled" within the meaning of the statute. Mem. at 11. In her Amended Complaint, Johnson alleges that, at the time she requested an accommodation, she "was substantially limited by her medical condition in numerous major life activities, including but not limited to lifting, reaching, pushing, pulling, and running." *Id.* ¶ 17 (adding that her "medical condition is permanent").

Under standards set forth in Title I, the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* § 12111(8). In other words, the term includes "an 'individual with a disability' who, with 'reasonable

---

[19] As noted, plaintiff's Charge of Discrimination meets these criteria and thus may be considered under a Rule 12(b)(6) standard. *See supra.*

accommodation,' can perform the essential functions of the job." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002) (citation omitted).

The ADA's definition of "disability" is set forth in 42 U.S.C. § 12102. Its primary meaning is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." *Id.* § 12102(1)(A). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," *id.* § 12102(2)(A), as well as "the operation of . . . major bodily function[s]." *Id.* § 12102(2)(B). Even if a person does not have a disability under the primary definition, the person will still be considered to have a disability if he or she has "a record of such an impairment," *id.* § 12102(1)(B), or is "regarded as having such an impairment." *Id.* § 12102(1)(C).[20]

Neither party has addressed the impact on the cited case law of the enactment of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (2008). The ADAAA "expand[ed] the category of individuals who fall within [the] ambit" of the ADA's definition of disability. *Young*, *supra*, 707 F.3d at 443 n.7. Congress enacted the ADAAA with the express purpose of legislatively overruling the Supreme Court's decisions in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002), as well as its predecessor, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), and their progeny. *See generally* ADAAA § 2(a)-(b); *see also id.* § 2(b)(4) (stating that one of the purposes of the ADAAA is "to reject the

---

[20] Although neither party directly addresses the alternate bases for disability, found in § 12102(1)(B) and § 12102(1)(C), plaintiff does allege that she was "entitled to protection under the ADA in that she was disabled and/or *regarded* [as] disabled[.]" Am. Compl. ¶ 37; *see also id.* ¶ 35 (asserting that ADA prohibits discrimination where "the employee is *regarded as* disabled") (emphasis added). Plaintiff's Opposition, however, makes no mention of either those allegations or these provisions more generally.

standards enunciated by the Supreme Court in *Toyota* . . . that the terms 'substantially' and 'major' in the definition of disability under the ADA 'need to be interpreted strictly to create a demanding standard for qualifying as disabled'"); *Summers*, *supra*, 740 F.3d at 329 (discussing ADAAA's purpose).

To that end, the ADA, as amended by the ADAAA, requires that the "definition of disability in [the ADA] shall be construed in favor of broad coverage," 42 U.S.C. § 12102(4)(A), and further states, *inter alia*, that "[a]n impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." *Id.* § 12102(4)(C). Because of this and other changes, a decision to apply the ADAAA rather than the ADA's pre-amendment language will be "consequential." *See Bennett v. Kaiser Permanente*, 931 F. Supp. 2d 697, 707 (D. Md. 2013). Indeed, the Fourth Circuit has recently concluded that although a district court's holding would have been "entirely reasonable" under *Toyota* and its progeny, the alleged impairment at issue fell "comfortably within the [ADAAA's] expanded definition of disability." *Summers*, 740 F.3d at 330-333.

The Fourth Circuit, joining at least eight other circuits, has determined that the ADAAA does not apply retroactively to acts of alleged discrimination that occurred before its effective date of January 1, 2009. *See* ADAAA § 8; *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150-52 (4th Cir. 2012); *see also, e.g.*, *Carter v. Pathfinder Energy Servs.*, 662 F.3d 1134, 1144 (10th Cir. 2011) (ADAAA inapplicable because it went into effect after "the *allegedly discriminatory conduct* in this case occurred") (emphasis added); *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 35 n.3 (1st Cir. 2009) (ADAAA does not apply retroactively to "conduct occurring before the Act became effective"). Although plaintiff was hired in 1999 and suffered injuries in 2005 and 2008, *see* Am. Compl. ¶¶ 7-8, the incidents on which her allegations of discrimination

are based occurred in 2010 and 2011.  *See id.* ¶¶ 13-22.  Therefore, this case is governed by the ADAAA.

Every case defendant cites in connection with its argument concerning plaintiff's disability predates the enactment of the ADAAA, and the continued validity of such cases is suspect.  *See* Mem. at 11-13; Reply at 7.  For instance, defendant cites *Toyota Motor Manufacturing, Kentucky, Inc.*, 534 U.S. at 197-98, for the propositions that the ADA's definition of disability must be "interpreted strictly to create a demanding standard for qualifying as disabled" and that the impairment must "severely restrict[] . . . activities that are of central importance to most people's daily lives."  *See* Mem. at 12-13.  As noted, however, that case was one that Congress specifically sought to overrule when enacting the ADAAA.

Similarly, defendant cites several of the EEOC's interpretive regulations concerning the ADA, including a provision stating that for "an individual to be 'substantially limited' they must be '[u]nable to perform a major life activity that the average person in the general population can perform.'"  Mem. at 11 (quoting 29 C.F.R. § 1630(j)(1)(i) (2010)).  Defendant also relies on 29 C.F.R. § 1630(j)(3)(i) (2010), which states, *id.*:

> The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

However, these regulations were amended in 2011 to conform with the ADAAA.  *See* 76 Fed. Reg. 16999 (Mar. 25, 2011).  Following the amendment, 29 C.F.R. § 1630.2(j)(1) (2012) states, in relevant part (emphasis added):

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. *"Substantially limits" is not meant to be a demanding standard.*
>
> (ii) An impairment is a disability within the meaning of this section if it

substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. *An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. . . .*

As noted, the parties have not addressed the impact of these revisions on the viability of plaintiff's claim  Regardless of the precise impact of the ADAAA's amendments, I am satisfied that plaintiff's allegations are adequate to defeat defendant's Motion.

In the Amended Complaint, plaintiff states that she was "substantially limited" in "numerous major life activities, including but not limited to lifting, reaching, pushing, pulling, and running." Am. Compl. ¶ 17.[21]  One limitation—lifting—is among those identified in 42 U.S.C. § 12102(2)(B), which also lists "working" as a "major life activity." *Id.*  Further, the post-ADAAA regulations recognize another limitation plaintiff identifies—reaching—as a major life activity. *See* 29 C.F.R. § 1630.2(i)(1)(i) (2012).  Moreover, plaintiff's allegations also discuss her medical history, describing two incidents and one surgery that gave rise to her physical limitations. *See id.* ¶¶ 7-11.  In light of those allegations, dismissal at this stage is unwarranted.

3. Plaintiff's ability to satisfactorily perform her duties

Defendant also argues that plaintiff's allegations fail to support a conclusion that she was performing her duties as a BPD police officer in a satisfactory manner. Mem. at 13.

As noted, one element of the prima face case for racial discrimination under Title VII is "satisfactory job performance" by a plaintiff. *See Coleman*, *supra*, 626 F.3d at 190.  Analogous requirements exist under the ADA. *See Rhoads*, *supra*, 257 F.3d at 387 n.11.  Although courts have adopted varying formulations for the prima facie case required to show wrongful discharge,

---

[21] Although such arguments are not well developed in the parties' briefing, at least some of the physical limitations plaintiff has identified may not result in disabled status under the ADA. *See, e.g.*, *Parkinson v. Anne Arundel Medical Center, Inc.*, 214 F. Supp. 2d 511, 516 (D. Md. 2002) (concluding, pre-ADAAA, that running is not a "major life activity").

some courts have required a plaintiff to show that she "'was performing the job at a level that met [the] employer's legitimate expectations,'" *see id.* (citation omitted), or that "she was otherwise qualified to perform the essential functions of her job[.]" *Gecewicz*, *supra*, 683 F.3d at 321. Similarly, an ADA claim for failure to accommodate requires a showing "'that with reasonable accommodation [the plaintiff] could perform the essential functions of the position[.]'" *Rhoads*, 257 F.3d at 387 n.11 (citation omitted).

As an initial matter, the parties disagree as to whether defendant's argument pertains only to plaintiff's Title VII claim or, instead, to both claims. In its opening brief, defendant makes no reference to the ADA, stating only that plaintiff "has failed to plead a plausible claim under Title VII," and cites a case involving only a Title VII claim but not an ADA claim. Mem. at 13 (citing *Showe v. Maryland Dept. of Public Safety and Correctional Services*, 2009 WL 2853799 (D. Md. Aug. 28, 2009)). For her part, plaintiff asserts in her Opposition that defendant's argument applies only to her race discrimination claim. *See* Opp. at 10 n.2.[22] In its Reply, however, defendant maintains that, due to plaintiff's "poor attendance record," she has not plausibly alleged either "that she was performing her job duties in a satisfactory manner under Title VII" or "that she is otherwise qualified under the ADA." Reply at 8. As explained below, that dispute is immaterial, because plaintiff's allegations are sufficient to survive dismissal as to both her Title VII and ADA claim.

Defendant insists that because plaintiff was on medical leave for an extended period between July and October 2010, plaintiff cannot show she satisfactorily performed her duties as a police officer. *See* Mem. at 13; Reply at 7-8. Indeed, "the ADA do[es] not require an employer to give a disabled employee 'an indefinite period of time to correct [a] disabling

---

[22] In support of that contention, plaintiff cites *McDonnell Douglas*. But, as explained above, its framework applies to both Title VII and ADA employment claims.

condition' that renders him [unable to work]." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 466 (4th Cir. 2012) (quoting *Myers v. Hose*, 50 F.3d 278, 280 (4th Cir. 1995)) (second alteration in original).[23]

Plaintiff counters that defendant's arguments "ignore the nature of [her] allegations," Opp. at 11, which amount to a claim that a police officer who (like plaintiff) is capable of performing light duty work meets the BPD's actual work requirements. Specifically, plaintiff reiterates that that she "has alleged that African Americans are routinely denied requests for light duty assignments and are instead placed on medical suspension," whereas non-African-Americans are granted light duty work. *Id.* Johnson adds that she "has sufficiently alleged" that the BPD "does not require its officers to be capable of making forcible arrests and other physically demanding tasks" and instead "permits its officers to hold full-time administrative and/or light duty positions." *Id.* at 12. Accordingly, "an employee on light-duty status can meet Defendant's performance expectations of a full-time police officer." *Id.*

In my view, defendant's arguments do not warrant dismissal. Plaintiff's allegations do not reflect that her medical suspension beginning in October 2010 or her eventual forced retirement in September 2011 was the product of her absence between July 2010 and October 2010. Rather, the allegations indicate that plaintiff was placed on medical suspension only when she returned from leave and sought to be assigned to light duty work on October 27, 2010. In other words, Johnson's allegations amount to a claim that she was able to perform light-duty work beginning in October 2010, and thus satisfied the BPD's actual work requirements, which allegedly required officers only to be capable of performing light-duty work. As the Amended

---

[23] Defendant raises no argument that, during times when plaintiff was able to work, her performance was deficient. The Amended Complaint alleges, without further explanation, that "Johnson was meeting BPD's performance expectations," *see id.* ¶ 6, but, in any event, plaintiff's qualitative performance while she was able to work is not at issue.

Complaint states: "Despite having a written policy stating that BPD does not have any permanent light duty Police Officer positions, BPD does in fact employ numerous Police Officers in permanent light duty and/or administrative positions." *Id.* ¶ 20. In light of those allegations, dismissal is not appropriate.

4. Adverse employment action

In addition, defendant targets two aspects of plaintiff's allegations that, in its view, do not constitute adverse employment actions: the medical suspension, and the detailing of plaintiff out of Baltimore's Southern District. *See* Mem. at 14 (citing Am. Compl. ¶ 18 and Mem. Exh. A (Charge of Discrimination)).

The Fourth Circuit has explained: "An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of a plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks, citation, and alterations omitted). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle*, *supra*, 650 F.3d at 337 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Typically, an adverse employment action has been found in cases of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin,* 178 F.3d 253, 255 (4th Cir. 1999); *see also James*, *supra*, 368 F.3d at 376. However, "'not everything that makes an employee unhappy is an actionable adverse action.'" *Settle v. Baltimore Cnty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999) (Davis, J.) (citation omitted), *aff'd*, 203 F.3d 822 (4th Cir. 2000), *and*

*aff'd sub nom. Harris v. Earp*, 203 F.3d 820 (4th Cir. 2000).[24]

According to defendant, plaintiff's medical suspension fails to qualify as an adverse employment action because it did not adversely affect the terms, conditions, or benefits of plaintiff's employment. *See* Mem. at 14-15. To that end, defendant asserts that various courts have concluded that "a suspension with pay is not an adverse employment action." Mem. at 14-15 (citing cases). In response, plaintiff cites her allegation that, while on medical suspension, she "'was ineligible for overtime and secondary employment, causing her to suffer a significant reduction in her income.'" Opp. at 13 (quoting Am. Compl. ¶ 21); *see also* Am. Compl. ¶ 31 (alleging a "significant reduction in her income" while on medical suspension). In its Reply, defendant does not address the adverse employment action issue.

The cases cited by the parties tend to present different factual scenarios than the one at issue here. Defendant relies largely on cases involving paid suspensions pending an investigation (often involving the plaintiff's own conduct). In those cases, the paid suspensions were typically shorter, and in no instance did the court discuss loss of overtime. *See* Mem. at 14-15 (citing *Joseph v. Leavitt*, 465 F.3d 87, 90-91 (2d Cir. 2006) (leave during pendency of criminal investigation and for five months thereafter during internal investigation); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 889, 892 (8th Cir. 2005) (eighty-nine day suspension pending

---

[24] Under Title VII, the standard for an adverse employment action in the context of a claim of retaliation is more lenient than for a substantive discrimination claim of the sort plaintiff raises. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("*Burlington Northern*") ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). However, even under the "lower bar" applicable to Title VII retaliation claims, "none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, 'an "Attendance Warning,"' a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'" *Wonasue v. University of Maryland Alumni Ass'n*, --- F. Supp. 2d ----, 2013 WL 6158375, at *10 (D. Md. Nov. 22, 2013) (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 470-71 (D. Md. 2011)).

investigation); *Peltier v. United States*, 388 F.3d 984, 986, 988 (6th Cir. 2004) (administrative

leave pending internal investigation and grand jury proceedings); *Von Gunten v. Maryland*, 243

F.3d 858, 869 (4th Cir. 2001) (short administrative leave pending internal investigation of

plaintiff's complaint not an adverse employment action), *overruled on other grounds by*

*Burlington Northern*, 548 U.S. 53; *Breaux v. City of Garland*, 205 F.3d 150, 154-55, 158 (5th

Cir. 2000) (administrative leave pending Internal Affairs investigations)); *see also, e.g.*, *Jarvis v.*

*Enterprise Fleet Services and Leasing Co.*, 2010 WL 1068146, at *18 (D. Md. Mar. 17, 2010)

(noting that a number of courts addressing Title VII retaliation claims have concluded that "'a

suspension with pay pending a prompt investigation into allegations of wrongdoing does not

constitute an adverse employment action'") (citation omitted).

Of greater relevance here is *Cepada v. Board of Educ. of Baltimore Cnty.*, 814 F. Supp.

2d 500 (D. Md. 2011), which plaintiff cites.  In *Cepada*, the district court concluded that the

plaintiff adequately pleaded an adverse employment action in his Title VII retaliation suit, where

the plaintiff was suspended with pay but lost income due to his ineligibility to teach night school.

*Id.* at 507 n.6, 515-16; *see also Rollins v. Verizon Maryland, Inc.*, 2010 WL 4449361, at *7 (D.

Md. Nov. 5, 2010) (in context of Title VII retaliation claim, observing that "[n]umerous courts

have held that a denial of the opportunity to work overtime constitutes retaliatory conduct").

It does not appear that the Fourth Circuit has squarely addressed the issue of whether a

paid suspension that nevertheless deprives an employee of overtime opportunities constitutes an

adverse employment action.  *See Brice v. Joule Inc.*, 229 F.3d 1141 (Table), 2000 WL 1225547,

at *2 (4th Cir. 2000) ("[W]e decline to decide whether [plaintiff's] transfer to an employment

site with potentially fewer overtime opportunities was an adverse employment action.").

Although the threshold for an adverse employment action for a Title VII retaliation claim is

lower than for a Title VII discrimination claim of the sort plaintiff raises here, *Burlington Northern*, 548 U.S. at 64, it is noteworthy that courts have found loss of overtime opportunities sufficient to qualify as an adverse employment action in that context. *See, e.g.*, *Cepada*, 814 F. Supp. 2d at 507 n.6, 515-16.

To be sure, plaintiff's allegations shed little light on how and to what extent her suspension deprived her of "overtime" and "secondary employment" for which she otherwise would have been eligible. However, plaintiff has alleged that the medical suspension resulted in a "significant reduction in her income" due to her ineligibility for "overtime and secondary employment." Am. Compl. ¶ 21. In my view, plaintiff has plausibly alleged an adverse employment action, and thus avoids dismissal on that basis. *See Boone*, 178 F.3d at 255.[25]

Defendant also argues that transferring plaintiff outside the Southern District is not an adverse employment action. Opp. at 15-16. To that end, defendant cites one case, *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364 (4th Cir. 1989), which involved a claim under 42 U.S.C. § 1983 and never discusses whether a transfer of districts constitutes an "adverse employment action." *See id.* At least one court in this District has concluded that a BPD officer's transfer to another district did not, on its own, constitute an adverse employment action. *Jackson v. Baltimore Police Dept.*, 2013 WL 1121412, at *6 (D. Md. Mar. 15, 2013) (Quarles, J). In so concluding, the district court observed that the plaintiff failed to allege "his prior position, how a patrol assignment had less responsibility or opportunity for promotion, or *any salary implications*." *Id.* (emphasis added).

---

[25] The parties disagree as to whether the adverse employment action argument is relevant to plaintiff's ADA claim. *Compare* Mem. at 16 (asserting that both ADA and Title VII claims should be dismissed for failure to show adverse employment action), *with* Opp. at 13 n.6 (stating that adverse employment action argument relevant only to Title VII claim). Even assuming, *arguendo*, that plaintiff's ADA claim requires an adverse employment action, plaintiff has made such a showing here.

Here, however, plaintiff has not merely alleged a transfer of districts. Rather, she has alleged that her medical suspension cost her significant income, due to lost overtime and secondary employment opportunities. That allegation of an adverse employment action is sufficient for plaintiff to avoid dismissal.

## 5. Similarly-situated comparators

Defendant argues that plaintiff "failed to plead facts that plausibly demonstrate that the comparators she has identified in her Amended Complaint are 'similarly situated' to her in all relevant respects." Mem. at 16. In her Opposition, plaintiff states that this argument pertains only to her Title VII claim. Opp. at 13 n.6. Defendant does not challenge that assertion. *See* Reply at 8-9.

A Title VII prima facie case has been held to include a showing that the plaintiff received "different treatment from similarly situated employees outside the protected class." *See Coleman*, *supra*, 626 F.3d at 190. Although courts do not always require comparator evidence, "a plaintiff who bases her allegations entirely upon a comparison to an employee from a non-protected class must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Sawyers*, *supra*, 946 F. Supp. 2d at 442 n.10 (Russell, J.) (quotation marks omitted; citing, *inter alia*, *Burdine*, *supra*, 450 U.S. at 258). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)). *See also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as

differing roles, performance histories, or decision-making personnel . . . .”), *aff'd*, 553 U.S. 442 (2008).

Plaintiff does not challenge defendant’s claim that she must allege comparator evidence. Instead, she avers that her allegations are sufficient. Both parties cite *Haywood*, 387 F. App’x 355, for the proposition that a plaintiff must be “similar in all relevant respects to their comparator.” *See* Mem. at 16; Opp. at 13-14.

Significantly, this is not a case in which the plaintiff’s and comparators’ supervisors were different. *See Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App’x 255, 257 (4th Cir. 2007) (“If different decision-makers are involved, employees are generally not similarly situated.”). According to plaintiff, two similarly situated African-American officers were “subjected to the same treatment by Major Barillaro,” in that they were “placed on medical suspension after requesting to be placed on light duty and were eventually forced to retire.” Am. Compl. ¶ 23. By contrast, four “Caucasian” or “Latino” police officers “were permitted by Major Barillaro to return to light duty instead of being placed on medical suspension or forced to retire.” *Id.* ¶ 24.

In its Reply, defendant concedes that plaintiff dealt with the same supervisor as the comparators she identifies, but insists she failed to establish that those comparators were “‘subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer’s treatment of them for it.’” Reply at 9 (quoting *Mitchell*, 964 F.2d at 583).

In my view, plaintiff has offered sufficient allegations concerning specified officers, and defendant has failed to identify any distinction between plaintiff and those comparators so as to undermine plaintiff’s allegation that she is similar to them in all “relevant respects.”

Accordingly, as with defendant's other arguments raised under Rule 12(b)(6), there is no failure to allege sufficient comparator evidence that would require dismissal.

### III. Conclusion

For the foregoing reasons, defendant's Motion is granted in part and denied in part. Specifically, Count I (the Title VII claim) may proceed, except with respect to plaintiff's forced retirement claim, which was not administratively exhausted. As for Count II (the ADA claim), that claim may proceed under Title I of the ADA, except with respect to plaintiff's forced retirement claim, which was not administratively exhausted. In all other respects, the Motion is denied. A separate Order follows, consistent with this Memorandum Opinion.

Date:  March 27, 2014                          _____/s/_____
                                               Ellen Lipton Hollander
                                               United States District Judge